THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HORACE L. SMITH, Plaintiff in Error.

*Opinion filed April 19, 1913—Rehearing denied June 5, 1913.*

1. CRIMINAL LAW—*when variance in christian name of victim is fatal.* Where the indictment for the crime against nature alleges that the christian name of the victim was Rosetta and the proof is that the name of the girl upon whom the crime was committed was Rosalia the variance is fatal, and it is not material that the question of variance was not raised on trial.

2. SAME—*when doctrine of idem sonans does not apply.* Where the indictment alleges the christian name of the victim of a crime to be Rosetta but the proof shows that the name of the girl upon whom the crime was committed was Rosalia the doctrine of *idem sonans* does not apply.

3. SAME—*what does not constitute the crime against nature.* Proof that the accused inserted his tongue in the private parts of a female child does not establish the crime against nature, which involves an unnatural use of the male organ, but the offense established by the proof is within the act of 1907, to define and punish crimes against children.

CARTER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

ERBSTEIN & VANBEAVER, RICHARD H. PETERSON, JAMES A. SCOTT, and LOUIS JAFFIE, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and ARTHUR R. ROY, for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, Horace L. Smith, was convicted, in the criminal court of Cook county, of the crime against nature and sentenced to imprisonment in the penitentiary for the term of five years.

The christian name of the victim of the crime was alleged to be Rosetta. The proof was that her name was Rosalia. The variance is fatal. (*Davis* v. *People,* 19 Ill. 74; *Penrod* v. *People,* 89 id. 150.) It is suggested that the question of variance was not raised on the trial, but this is immaterial. The indictment charged a crime against a certain person, but the proof failed to show it and did show a crime, if any, against another person. The doctrine of *idem sonans* is invoked but is not applicable. The difference in the sound of the two names, even when they are carelessly spoken, is pronounced, and they are clearly distinct names.

The act of the plaintiff in error which was testified to as constituting the crime was the insertion of his tongue in the private parts of the little girl, who was eleven years old. It is insisted that this proof did not establish the offense charged and that the unnatural use of the male sexual organ is an essential element of the crime. Sodomy was not proved, but we have held that the crime against nature, as that expression is used in our statute, is more extensive than sodomy. (*Honselman* v. *People,* 168 Ill. 172.) In all the cases in which convictions have been sustained of which we have knowledge, the male sexual organ was involved. It was necessarily so at common law, for both penetration and emission were essential elements of the offense. By statute 9 George IV, (chap. 31, sec. 18,) it is provided, after reciting the fact of the frequent escape of offenders because of the difficulty of the proof of the completion of the crime, that proof of penetration, only, should be sufficient for conviction. Our statute provided, in 1827, that it shall not be necessary to prove emission to convict any person of the crime of rape or of the crime against nature, applying the same rule to both crimes. (Laws of 1827, sec. 49, p. 132.) Acts such as that testified to do not constitute the offense for which defendant was sentenced, but the law has provided for their punishment by the act

to define and punish crimes against children. (Laws of. 1907, p. 266.)

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the foregoing opinion. The alleged variance was not raised in the trial court. The name of the complaining witness given in the indictment was Rosetta May. She testified that it was Rosalia May. She identified plaintiff in error as the person who had enticed her to his room. He himself admitted that she had been in his room as she claimed but denied her story as to what was said and done there.

Under the earlier authorities, where the name of a third person was necessary to the identity of an offense, proof of a different name raised a fatal variance, and this rule was strictly applied. If the names were not *idem sonans* the variance was held fatal. Under the modern rule, however, in most jurisdictions it is held that the question is one of identity, and where the identity of the party in evidence as the one named in the indictment is established the variance will not be held fatal. (14 Ency. of Pl. & Pr. 287; *Bennett* v. *State,* 84 Ark. 97.) This is what law and reason should require—the substance and not the shadow.

Under many authorities it might well be argued that the names "Rosalia" and "Rosetta" were *idem sonans.* (See *Rivard* v. *Gardner,* 39 Ill. 125; *Guertin* v. *Mombleau,* 144 id. 32; *Barnes* v. *People,* 18 id. 52; *People* v. *Spoor,* 235 id. 230.) But if it be conceded that the two names are not *idem sonans,* in my judgment the variance, on this record, should not be held fatal. The basis of the rule of *idem sonans* is, that the person is the same though the name may be spelled differently. In reason, however, what must necessarily be required under any proper criminal procedure is, not identity of sound in the name but identity

of person.   Even though the names are alike, both in sound and in spelling, if there are two persons of the same name that fact can be proven.

In *Bennett* v. *State, supra,* the first name of the deceased in a homicide case was given as "Mooney," some evidence tending to show that he was so known and other evidence that he was called "Monte."   The court held that on the evidence in the record there could be no question as to the identity of the person referred to in the evidence with the one named in the indictment, and affirmed the case.

In *State* v. *Tillotson,* 85 Kan. 577, an information described the person having charge of a certain child as Lottie Bleakley while the evidence tended to show that her name was Charlotte Bleakley.   The court held that the two names were identical, the name "Lottie" being a diminutive of "Charlotte;"   that whether that were true or not, the difference was immaterial, as it was clear from the record that the accused had not been misled or hampered in any way by the difference in names.

In *People* v. *Plyler,* 121 Cal. 160, the crime was alleged to have been committed upon one Charles Harris. That person testified that he had been known by that name but that his right name was Isaac Crossley.   The court there held that there was no variance, stating (p. 163) : "There was an absolute identity of names and person, and the fact, disclosed upon the trial for the first time, that the complaining witness' true name was something different did not constitute a variance and could not have injured defendant in the slightest degree."

In *Rutherford* v. *State,* 79 Tenn. 31, the indictment charged the accused with killing John Bledsoe while the evidence merely showed that the person killed was named John, some of the witnesses speaking of him as John and others as "the deceased."   The court there held that the failure to give the full name was not material after verdict, as there was no contest during the trial on that point.

In *Commonwealth* v. *Gould,* 158 Mass. 499, an indictment charged one Henry Bishop with selling intoxicating liquor contrary to law. On the trial it appeared that his name was Henri Leveque. He himself, however, testified that he was commonly called Henri. It was held that the question of variance was one of fact for the jury.

It is true that the decisions of this court cited in the majority opinion uphold the conclusion there reached on this point, but in commenting on one of those decisions, (*Davis* v. *People,* 19 Ill. 74,) this court, in *Shepherd* v. *People,* 72 Ill. 480, stated that the party killed must be proved to be the same person named in the indictment. In the latter case the identity of the deceased was held established even though the testimony merely showed that the person killed was "Johnson, the barber," without giving his first name, while the indictment named him as "Wesley Johnson," and that from the record there could be no question as to the identity and that the variance was not fatal. In *Little* v. *People,* 157 Ill. 153, the variance was between "John F. Hinckley" and "J. F. Hinckley," and in *Bonardo* v. *People,* 182 Ill. 411, it was between "John Young, Jr." and "Johnnie Young." In neither case was the variance held fatal, as the evidence showed identity of person. See, also, *People* v. *Reilly,* 257 Ill. 538.

Section 9 of division 11 of our Criminal Code reads, in part, as follows: "No motion in arrest of judgment, or writ of error, shall be sustained, for any matter not affecting the real merits of the offense charged in the indictment." (Hurd's Stat. 1911, p. 830.) The difference in the name of the complaining witness as found here does not affect the "real merits" of the cause unless it can be shown to have injured the rights of plaintiff in error. The object in naming the injured person in a criminal prosecution is for the purpose of identification, in order that the accused may not be tried twice for the same offense, and that he may be enabled to prepare his defense and not be

taken by surprise on the trial. (*People* v. *Reilly, supra;
Bennett* v. *United States,* 194 Fed. Rep. 630.) Manifestly,
plaintiff in error was not taken by surprise by this alleged
variance. He admitted that the girl who testified on the
trial was the same person he invited into his room, and
made no claim in the trial court that the complaining wit-
ness who testified was not the same person named in the
indictment. Plainly, he was not misled in preparing for
his defense by this alleged variance. Can he be protected
on this record from being prosecuted again for the same
offense for which he was convicted? The bill of exceptions
shows plainly the identity of the complaining witness as
named in the indictment with the one who testified. This
being so, this record, without any parol testimony, would
be sufficient to protect him on a second prosecution. Even
if that were not true, the general rule is that substantial as
well as formal identity may be shown by parol testimony.
(2 Wharton on Crim. Evidence,—10th ed.—sec. 593.) Pa-
rol evidence is always admissible, and sometimes necessary,
to establish the defense of prior conviction or acquittal.
(*Durland* v. *United States,* 161 U. S. 306.) "In cases of
dispute, parol evidence is admissible to prove (what the
record cannot sufficiently show) that the offenses were or
were not identical." (Wharton on Crim. Pl. & Pr.—
8th ed.—sec. 481; 12 Cyc. 369, and cases cited.) Where
an indictment against an accused for burglary had been
*nolle pross'd* and a new one found against him, this court
held that it was competent to show by parol evidence that
the crime charged in both indictments was one and the
same. (*Swalley* v. *People,* 116 Ill. 247.) Any person
present at the former trial, as well as the trial judge or
a juror, may be called to establish the identity of the par-
ties or offenses. Underhill on Crim. Evidence, (2d ed.)
sec. 197; 5 Ency. of Evidence, 879, and cases cited.

Even though plaintiff in error could have raised this
question on the trial below, I cannot escape the conclusion

that he is in no position to raise it now. The ancient doctrine that the accused could waive nothing undoubtedly rested on the desire of the courts that no innocent man should be convicted. That rule arose when the accused could not testify in his own behalf, was not furnished with counsel and had little opportunity of presenting the real facts bearing on the issues. Then the science of pleading was often considered more important than the substance of right. For years there has been a growing disposition on the part of legislatures and courts to restrict the scope of objections which do not affect the substantial justice of the cause. Whatever conclusions may be drawn from the earlier decisions of the court on this question, in my judgment, under those handed down in recent years as well as by the great weight of authority in other jurisdictions, this alleged variance should on this record be held not substantial or fatal.

Neither do I concur in the conclusion that the evidence in this record does not show that the plaintiff in error was guilty of the crime against nature. It may be conceded that this evidence would not prove the common law crime against nature, but we have held that under our statute that crime is not the common law offense of that name, (*Kelly* v. *People,* 192 Ill. 119,) and in *Honselman* v. *People,* 168 id. 172, that this offense includes, under the statute, all forms of bestial or unnatural copulation. Our statute does not attempt to define this crime, but merely states that "the infamous crime against nature, either with man or beast, shall subject the offender to imprisonment in the penitentiary," etc. The lexicographers define sodomy as "carnal copulation in an unnatural manner," and this was substantially the definition given by some of the common law writers. (1 Hawkins' Pleas of the Crown, 357.) While the authorities are not in harmony, I think, under the reasoning of this court in *Kelly* v. *People, supra, Honselman* v.

*People, supra,* and *People* v. *Abrams,* 249 Ill. 619, as well as in *State* v. *Vicknair,* 52 La. Ann. 1921, *State* v. *Whitmarsh,* 128 N. W. Rep. (S. Dak.) 580, and *Herring* v. *State,* 119 Ga. 709, decided in other jurisdictions, it should be held that the evidence showed plaintiff in error guilty of the offense charged in the indictment.