(No. 21124.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VARNER CORRY, Plaintiff in Error.

*Opinion filed June 24, 1932.*

BURKE, IMMENHAUSEN & CRANE, (JAMES M. BURKE, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Varner Corry was indicted in the criminal court of Cook county for the murder of Edward Francis Smith. He pleaded not guilty, waived a trial by jury, was found guilty by the court and sentenced to imprisonment in the penitentiary for eighteen years. He prosecutes this writ of error.

The plaintiff in error, Varner Corry, is fifteen years of age, and resided with his parents at 736 South Claremont avenue, in the city of Chicago. During the forenoon of Memorial Day, May 30, 1931, the plaintiff in error, his brother Earl Corry, thirteen, and Schuyler Pierson, sixteen years of age, went to the John Marshall High School at Adams street and Kedzie avenue in Chicago. The day was Saturday as well as a holiday and the school was closed. By climbing a rainspout to the second floor and opening an unlocked window, the boys gained entrance to the building. They proceeded to the swimming pool on the first floor and undressed, the plaintiff in error laying his clothes and a revolver which he brought with him on a bench near the tank. The boys were in the water nearly two hours. Early in the afternoon a janitress employed at the school discovered the open window. Accompanied by her son, she entered the building and after some investigation heard noises emanating from the swimming pool. The janitress

and her son returned to the street where they met police officer Edward Francis Smith and informed him of the presence of intruders in the building. The officer was conducted to the swimming pool where he found the plaintiff in error climbing out of the tank while the other boys were still in the water. The police officer, who was in full uniform, commanded the boys to dress. Upon hearing the officer's command, the plaintiff in error grabbed the revolver from the bench, pointed it at the officer and ordered him to put up his hands. The officer, at the instant, was about ten feet from the plaintiff in error, and instead of complying with the latter's demand, jumped behind a pillar. Shots followed, three of which the plaintiff in error fired. Two bullets struck the officer. He walked out of the room and died from the effects of the bullets on the same day.

After the shooting, the three boys took their clothes, ran to the assembly room of the school and dressed. The plaintiff in error returned to his home immediately. His brother and Pierson stopped a short time to play with other boys in the vicinity of the school building. The plaintiff in error took the discharged shells from the revolver and threw them in the sand under the porch of his home. Shortly thereafter he gave the revolver to his brother who placed it under the rear steps. On the evening of the same day, a police officer called at the home of the plaintiff in error and found the revolver under the steps and five empty shells in the sand under the porch. A search of the house disclosed ten loaded shells in a box in the bed-room of the plaintiff in error. Later in the evening, at a police station, in the presence of eight police officers, the plaintiff in error signed a written statement in which the foregoing facts were set forth.

The revolver which the plaintiff in error had in his possession on Memorial Day belonged to the John Marshall High School, and had been used in starting and ending athletic games. On a Sunday about two weeks previous to Memorial Day, the plaintiff in error, his brother Earl and

Pierson entered the school building and took the revolver from the coach's desk in the gymnasium. He then purchased cartridges for the revolver, used it in target practice in the basement of his home, and re-loaded the revolver before his visit to the high school building on Memorial Day.

A psychiatric examination of the plaintiff in error was made by Dr. Harry A. Paskind with the consent of the former, his parents and attorneys and the State's attorney. Dr. Paskind's report, by agreement, was admitted in evidence. His examination disclosed that the plaintiff in error was indifferent to the shooting of the police officer, to the consequences of the shooting, to his incarceration and to his future. The doctor's conclusion was that the plaintiff in error was neither insane nor feeble-minded, but that characteristics distinctly pathological, among them apathy, listlessness, stubbornness and emotional shallowness, were present.

Dr. Alex S. Hershfield, an alienist, made a mental and physical examination of the plaintiff in error in the county jail and ascertained, among other things, that the latter had read detective stories and had attended moving picture theatres which displayed gangster fights. Called by the court as a witness, Dr. Hershfield did not find the plaintiff in error insane or mentally defective, but expressed the opinion that the boy showed an under-development of his sense of mental values and that he did not fully comprehend the jeopardy of his situation. A hypothetical question embodying the principal facts disclosed by the evidence was propounded and the doctor's opinion was asked whether the boy described in the question could distinguish between right and wrong when the shot was fired. The doctor answered that at the particular time the boy did not know the difference between right and wrong; that the sudden appearance of the police officer created a condition of fright which paralyzed his judgment, and that, influenced by the stories he had read and the pictures he had seen, he acted,

at the moment, in the manner he did. The previous good reputation of the plaintiff in error for peaceable behavior in the neighborhood of his home was shown by the defense.

Ten errors are assigned upon which a reversal of the judgment is sought. Only four need to be considered, and of these the first is that the court, in permitting the State, over the objection of the defendant, to introduce evidence of other crimes having no connection with the offense charged in the indictment, and neither tending to identify the accused nor to show consciousness of guilt, committed reversible error. The specific testimony to which this objection is urged and emphasized concerned the theft of the revolver from the high school gymnasium two weeks previous to the shooting and the purchase of cartridges by the plaintiff in error for use in the weapon. It was proper to show that he obtained the revolver and bought cartridges suited to its use as facts tending to establish the commission of the crime charged, and the revolver, loaded cartridges and discharged shells were admissible in evidence for that purpose. (*People* v. *Kircher,* 309 Ill. 500; *People* v. *Selknes,* 309 id. 113). It was also proper to show, as a motive for the shooting, that the plaintiff in error feared arrest because of the theft of the revolver. (*People* v. *Doody,* 343 Ill. 194; *People* v. *Watkins,* 309 id. 318). The evidence, however, was not admissible for the purpose of determining the measure of punishment to be adjudged for the particular crime charged in the indictment.

Complaint is made that the assistant State's attorney in his closing argument commented upon the failure of the plaintiff in error to testify. Referring to the latter, the attorney for the prosecution remarked that "the one who is most greatly interested has remained silent." Section 6 of division 13 of the Criminal Code provides that "a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him,

nor shall the court permit any reference or comment to be made to or upon such neglect." (Cahill's Stat. 1931, p. 1089; Smith's Stat. 1931, p. 1093). The remark by the assistant State's attorney was improper. (*People* v. *Annis*, 261 Ill. 157; *People* v. *McMahon*, 244 id. 45; *Austin* v. *People*, 102 id. 261; *Angelo* v. *People*, 96 id. 209). It does not appear, however, and it will not be presumed that the trial judge was influenced by counsel's reference to the failure of the plaintiff in error to testify.

The court, in the course of its decision, referred to reports which had been submitted to it. Dr. Paskind's report was the only one admitted in evidence and it is contended that the consideration of other reports, not introduced in evidence, was a denial of the constitutional right of the plaintiff in error to be confronted by the witnesses against him, and therefore constituted reversible error. In rendering judgment, the court disclosed and apparently acted upon a knowledge of the family history of the plaintiff in error not shown by the record. The court also stated that the plaintiff in error not only killed a police officer but also "caused three children to go through life without the help of their father." There was no evidence that the police officer had any children, and even if it had been shown that three children survived the deceased officer, the fact would have shed no light upon the guilt or innocence of the plaintiff in error, and could not have been considered in the determination of that question. (*Filippo* v. *People*, 224 Ill. 212; *People* v. *McMahon*, 244 id. 45). The court further stated that the case had aroused unusual interest and that different associations and persons had expressed various opinions with respect to the proper punishment which the plaintiff in error should suffer. Manifestly, such opinions, incompetent in any event, should have been excluded.

After observing that the decision must be based upon the testimony of persons other than the plaintiff in error, the court addressing him, said: "Their testimony shows

that you have committed several crimes: First, you broke into a school house where you knew you had no right to be; second, while there you stole a revolver which had been used for the purpose of starting athletic events; third, you purchased bullets and practiced shooting with the revolver, and then for about two weeks you carried this loaded weapon concealed on your person; fourth, you again forced and re-entered that same school carrying with you a loaded stolen revolver," * * * Later, there was added: "The court has, after painful study and consideration of the evidence, concluded that you knew you were doing wrong when you entered the school house the first time and stole the gun. You knew you were doing wrong when you loaded it and carried it concealed about your person." Apparently the offenses which the court recounted were taken into consideration in determining the punishment to be imposed. By waiving his right to a trial by jury, the plaintiff in error did not thereby waive any other right. The charge was murder, and the punishment prescribed for that crime is not uniform in all cases but may vary within a wide range. The plaintiff in error had the right not only to have his guilt or innocence of the particular charge determined free from the prejudicial effect of incompetent evidence, but also to have his punishment, when found guilty of the crime charged, fixed solely with reference to the facts and circumstances of that crime, excluding from the process of making such decision, the consideration of other independent and unrelated offenses. *People* v. *Cassler,* 332 Ill. 207; *People* v. *Heffernan,* 312 id. 66; *People* v. *Meisner,* 311 id. 40; *People* v. *Lane,* 300 id. 422; *Farris* v. *People,* 129 id. 521.

For the errors indicated the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*