THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROSE MARIE FERRARO, Defendant-Appellant.

Second District    No. 79-62

Opinion filed December 21, 1979.

Albert A. Klest, of Klest, Etchingham and Stavros, of Hoffman Estates, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant was convicted of switching price tags in a retail mercantile establishment under the provisions of section 16A—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16A—3(c)). The court imposed a fine of $200 plus court costs and suspended the same. The defendant appeals.

On November 14, 1977, the defendant went to the J. C. Penney Co. store in Villa Park where she was observed by a security guard removing a price tag from a less expensive brassiere and, after removing the expensive price tag and placing the less expensive price tag on the more expensive brassiere, she paid the lesser amount at the checkout counter. She was followed by the security guard outside, placed under arrest and taken back into the store. The security guard had further observed her place the more expensive price tag in her right hand coat pocket. The police were called, and the policeman removed the higher price tag from the right-hand coat pocket of the defendant, who thereupon stated, in substance, that she had never done anything like that before. This violation of the provisions of section 16A—3(c) is a matter of first impression in this State under this act.

The defendant raises the following issues: (1) The complaint is void because the caption indicates the plaintiff is the Village of Villa Park rather than the State; (2) there is a fatal variance in that the complaint names the defendant as Rose Marie Ferraro while her name is actually Mary Rose Ferraro; (3) the State failed to prove ownership of the property stolen and the corporate existence of the J. C. Penney Company; (4) whether the State proved the retail value of the brassiere; (5) whether the trial court erred in refusing testimony of defendant as to possible pricing error of other merchandise; (6) whether the trial court erred in admitting a spontaneous penitential statement of defendant.

■■ ■ The first contention of the defendant is that the caption of the complaint herein discloses that the plaintiff is the Village of Villa Park rather than the People of the State of Illinois. We disagree. We find, first, that the caption is not controlling. Secondly, the caption does not disclose that the plaintiff is the Village of Villa Park. In support of the argument on behalf of the defendant, the defendant has cited *City of Chicago v. Berg*

(1964), 48 Ill. App. 2d 251, 199 N.E.2d 49. This case is inapposite. In *Berg* the defendant was given a traffic ticket charging him with a violation of the Municipal Code of Chicago. The plaintiff was the State of Illinois. The name of the City of Chicago did not appear on the traffic ticket. The court held that actions to enforce municipal ordinances must be brought in the corporate name of the municipality. In the case before us the complaint charged specifically a violation of section 16A—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16A—3(b)). The complaint states, "In the name and by the authority of the People of the State of Illinois," alleges the offense in violation of the aforementioned statute, and concludes, "Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the people of the State of Illinois." There is nothing in the complaint to indicate that the defendant was charged with a municipal ordinance violation and the notation at the top of the complaint,

"STATE OF ILLINOIS
COUNTY OF DU PAGE
VILLAGE OF VILLA PARK,"

is not conclusive in any way or indicative of an ordinance violation, nor was the defendant tried for an ordinance violation. Therefore, this argument is without merit.

■■ ■ The second contention of the defendant is that the complaint charged "Rose Marie Farraro" with the offense herein whereas the proof showed the person prosecuted was "Mary Rose Ferraro." Examination of the early authorities in this State discloses that, where the name of the victim of the offense, or the defendant, does not come under the *idem sonans* doctrine, the variance is fatal. In more recent cases it is held that a variance as to names alleged in a complaint or indictment, and those proved by evidence, is not regarded as material unless some substantial injury is done to the accused thereby. In support of the argument that the variance herein is fatal, the defendant has cited the old case of *People v. Smith* (1913), 258 Ill. 502, 101 N.E. 957, where the Christian name of the victim of a crime was alleged to be Rosetta and the proof was that her name was Rosalia. The majority of the court held that the variance was fatal. However, Justice Carter dissented, stating:

"Under the modern rule, however, in most jurisdictions it is held that the question is one of identity, and where the identity of the party in evidence as the one named in the indictment is established the variance will not be held fatal." (258 Ill. 502, 504, 101 N.E. 957, 958.)

Oddly enough, in *People v. Walker* (1955), 7 Ill. 2d 158, 130 N.E.2d 182, the supreme court, citing *People v. Smith* (1930), 341 Ill. 649, 173 N.E. 814, stated:

"Proof of the Christian name is unnecessary, however, where the facts in evidence leave no doubt as to the identity of the person." (7 Ill. 2d 158, 161, 130 N.E.2d 182, 183.)

This appears to be in error as the decision stated from the *Walker* case is found in the dissent in the early case of *People v. Smith*, not in the majority opinion. Following those cases, in *People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361, the supreme court, citing *Walker*, again stated that proof of the Christian name was unnecessary where the facts leave no doubt as to the identity of the person. The court in *Jones* went on to state:

"The liberalization of criminal pleading also reflects a lessening in importance of the indictment's secondary functions. The indictment as a means of informing defendants of particulars concerning the case is now far overshadowed by the array of discovery procedures available to the defense." (53 Ill. 2d 460, 464, 292 N.E.2d 361, 363.)

In summary, the modern approach to the question is not necessarily based on *idem sonans*, which may well be the situation in the case before us, but is based upon the fact as to whether the complaint sufficiently advises the defendant of the material elements involved. Unless it appears to the court that either the jury was misled or that some substantial injury was done to the accused whereby he was unable to intelligently make his defense, or was exposed to the danger of a second trial on the same charge, the alleged misnomer of the defendant's Christian name is not reversible error. The contention that a variance as to the Christian name herein, charging "Rose Marie Ferraro," is of no consequence under the facts of this case. During the trial herein the defendant did not raise this issue and, as a matter of fact, she not only made a personal bond for her release from custody under the name of Rose Marie Ferraro but her attorney entered her appearance as Rose Marie Ferraro. Under these facts the argument is specious that she was not sufficiently apprised by the complaint to effectively prepare and present her defense.

The third contention of the defendant is somewhat two-fold in nature, alleging first that the State failed to properly charge ownership of the property in question and, secondly, that the corporate existence of J. C. Penney & Co. was not proven. This issue was raised in *People v. Sims* (1975), 29 Ill. App. 3d 815, 331 N.E.2d 178, where the court stated that if the ownership of the property is alleged to be in a corporation, then the legal existence of the corporation is a material fact that must be proven. However, in that case, the court went on to state, "However, the prescriptions formerly associated with the proof of a corporation's existence are no longer required" (29 Ill. App. 3d 815, 817, 331 N.E.2d 178, 180), and, citing *People v. McGuire* (1966), 35 Ill. 2d 219, 220 N.E.2d 447, went on to say:

"The court held that the corporate existence could be proven by the direct oral testimony of a person with knowledge of that fact. There have been further relaxations. * * *

* * *

A Jewel Food Store is not an obscure neighborhood grocery. It is a unity in a well-known chain of supermarkets in the Chicagoland area. Any Illinois judge could take judicial notice that the Jewel company has a corporate make-up and is an entity capable of owning property. * * * The complaint, as amended on its face, alleged that Jewel was an Illinois corporation and specifically apprised him of the name and address of the store and the date its property was stolen. Sims has the complaint, the transcript of the trial and the opinion of this court to shield him from a second prosecution for the same offense. He was accused and proven guilty of stealing merchandise that was owned by someone other than him, and to reverse his conviction for an unprejudicial failure of proof would be elevating form over substance and would be promoting a minor irregularity into a major defect affecting a substantial right." (29 Ill. App. 3d 815, 817, 331 N.E.2d 178, 180.)

The same principle applies in the case before us. While the Jewel Food Store is well known in the Chicago area, J. C. Penney & Co. is known throughout the United States and, in this case, the complaint specifically stated that,

"* * * the said defendant knowingly took possession of certain merchandise offered for sale in a retail merchantile establishment, J. C. Penney Co. Inc., 200 E. North Avenue, Villa Park, Du Page County, Illinois, a corporation licensed to do business in Illinois * * *."

The property was offered for sale by the J. C. Penney Co., their right of possession was in that company and, as was stated in *Sims*, the property was owned by someone other than the defendant.

This issue of corporate existence was further explored in *People v. Toliver* (1978), 60 Ill. App. 3d 650, 377 N.E.2d 207, where the court stated:

"The record shows the merchandise was taken from a Jewel food store, and the court may take judicial notice that a Jewel food store is a retail mercantile establishment within the statutory definition. A trier of fact may use common sense and general knowledge in considering evidence and drawing the proper inference from it." (60 Ill. App. 3d 650, 652, 377 N.E.2d 207, 209.)

To contend that the adult population of the United States is not familiar with the J. C. Penney & Co. as being a corporation is nonsense. In *People*

*v. Rance* (1979), 68 Ill. App. 3d 639, 386 N.E.2d 566, the court stated:

> "Moreover, we have previously noted under section 9 of the Business Corporation Act (Ill. Rev. Stat. 1975, ch. 32, par. 157.9(a)), the word 'company' connotes an incorporated entity. [Citation.] 'A trier of fact may use common sense and general knowledge in considering evidence and drawing the proper inference from it.' " (68 Ill. App. 3d 639, 645, 386 N.E.2d 566, 571.)

(See *People v. Whittaker* (1970), 45 Ill. 2d 491, 495, 259 N.E.2d 787; see also *People v. Childress* (1971), 2 Ill. App. 3d 319, 276 N.E.2d 360; *People v. Watts* (1979), 76 Ill. App. 3d 791, 395 N.E.2d 199.) It is to be noted that both *Rance* and *Whittaker* were jury trials. In the case before us both security officers testified that they were employed by J. C. Penney. The witness, Floro, did not state that J. C. Penney was a corporation but the witness Mason testified that she was employed by the "J. C. Penney Company, in Villa Park." Under the facts of this case no objection having been raised at trial as to the proof of the corporate existence of the J. C. Penney Co., and under current legal thought in this State, the corporate existence was properly alleged in the complaint. J. C. Penney was indicated as a company by the employees thereof and common knowledge throughout the United States is that J. C. Penney is a corporation of which judicial notice may be taken. Common sense indicates that the contention that the corporate existence was not proven is without merit. In this connection we do not find that *People v. DeBartolo* (1975), 24 Ill. App. 3d 1000, 322 N.E.2d 251, an opinion of this court, is to the contrary. See also *People v. Jablonskis* (1978), 64 Ill. App. 3d 559, 381 N.E.2d 774.

■■ The fourth contention of defendant is that the State failed to prove the full retail value of the bra upon which the defendant paid the lesser amount after switching the price tag from a more expensive bra. The testimony in this regard is most conclusive. The security guard, as stated above, saw the defendant remove the higher priced tag from another item and place a lower price tag on the same. She then placed the higher price tag in her pocket and, after she had paid the lesser amount, she was arrested and the higher price tag was found in her pocket. Under these circumstances it is merely a question as to which testimony the jury believed, that of the defendant who denied changing the same, or that of the security guard who saw her do it. More glaring perhaps, however, is the fact that the higher price tag was found in the defendant's pocket. The actual value of the merchandise is not in question. The price was on the merchandise, it was removed by the defendant and a lower price tag affixed thereon. This case comes within all fours of the statutory provision pertaining to such an offense as set forth in section 16A—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16A—3(b)), where

defendant attempted to, and did, purchase such merchandise at less than the full retail value as shown by the ticket thereon. Defendant's argument that there was no testimony as to the stated or advertised price of that item of merchandise is incorrect. The value of the item taken by the defendant was set forth on the price tag removed by her and that, in this court's opinion, is sufficient evidence of the stated value of the item.

■■ The defendant attempted to prove pricing errors in the store. She returned to the store and purchased certain items and attempted to introduce evidence as to pricing errors thereon. This evidence was not admitted as being irrelevant and we agree. Defendant overlooks the fact that it is not a question of pricing error in this case. The charge was, and is, that she removed the price tag on the item in question and placed a lower price tag from another bra for the purpose of paying the lesser amount. And, she was caught doing exactly that.

■■ The last contention of the defendant is that the statement made by defendant after the discovery of the switched price tag in her right-hand coat pocket was the result of an illegal arrest and an illegal search.

There is no question but that the defendant had been arrested. In her testimony she stated that the security guard, Mrs. Mason, flashed her badge and twice told her she was under arrest for shoplifting. The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—3) provides: "Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." In this case Mrs. Mason saw the price switching committed by the defendant and subsequently made a citizen's arrest. Additionally, when the police officer arrived on the scene it was not necessary for him to specifically state to the defendant that she was under arrest. It was stated in *People v. Ussery* (1974), 24 Ill. App. 3d 864, 869, 321 N.E.2d 718, 721, "If a police officer in his line of duty restrains an individual's liberty, then arrest has occurred * * *." As we stated in *People v. Rassmussen* (1978), 61 Ill. App. 3d 15, 17-18, 377 N.E.2d 359, 362, "It is not necessary for a police officer to say any particular words, in order to effectuate an arrest." Likewise, in *People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577, the court held that no formal declaration of arrest is necessary for a valid arrest to occur. The defendant knew she was under arrest by her own testimony, and the arrest continued by the appearance of the officer who restrained her liberty. There is no question but that the authority to arrest was present, both in the private citizen, Mrs. Mason, as a security guard, as well as the police officer. The authority to arrest was obvious, and an assertion of that authority was made as well as the restraint of her person.

We turn then to the question of the legality of the search of the defendant. This is provided for in the Code of Criminal Procedure of

1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—1).

"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of * * * (c) Discovering the fruits of the crime; * * *."

This codification of the search without a warrant is a result of the decisions of the courts of Illinois prior to the enactment of that statute in 1963. (See *People v. Varnadoe* (1964), 54 Ill. App. 2d 443, 447, 203 N.E.2d 781, 783.) This principle was expounded further in *People v. Clark* (1955), 7 Ill. 2d 163, 170, 130 N.E.2d 195, 199, and in *People v. Faulkner* (1957), 12 Ill. 2d 176, 181, 145 N.E.2d 632, 635. See also *People v. Huggin* (1974), 25 Ill. App. 3d 409, 323 N.E.2d 370.

Finally, the Supreme Court of the United States stated in *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

■■ In conclusion, therefore, we find that the arrest was made, the defendant acknowledged it, and the search thereto is justified both by the case law of this State and the Supreme Court of the United States, as well as by statute of the State of Illinois.

■■ The penitential statement made herein, which was not objected to at the time of the testimony of the State's witness, was that the defendant stated that she was sorry, that she had never done anything like that before, and that she would pay for the item taken, further asking that she not be taken to the police station. This statement, characterized "penitential" by the defendant, was not objected to, and the issue as to *Miranda* warnings has not been raised as the statement was spontaneous. We, therefore, find that this last contention of the defendant is without merit.

For the reasons stated above, the conviction is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.