THE CITY OF JOLIET, Plaintiff-Appellee, v. MICHAEL D. FRANKLIN, Defendant-Appellant.

Third District    No. 3—92—0164

Opinion filed April 23, 1993.—Rehearing denied June 9, 1993.

Donald F. Spak, of Hamblet, Casey, Oremus & Vacin, of Chicago (Elizabeth H. Schoettly, of counsel), for appellant.

Thomas A. Thanas, of City Legal Department, of Joliet (Mary Kucharz, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, Michael D. Franklin, was found guilty of violating a municipal ordinance of the City of Joliet, to wit, criminal trespass to land (Joliet, Ill., Code of Ordinances §21—107 (1988)). The trial court sentenced the defendant to 60 days of supervision and a $50 fine. The defendant appeals.

The incident giving rise to the charge against the defendant occurred at the 1991 "Taste of Joliet" (the Taste). In 1991, the Taste was scheduled to take place on four consecutive days in late May and early June. In attendance were some 40 food vendors selling food to the public. The Taste also included a carnival and scheduled entertainment, including the "Aerobic All Stars" and a one-man act known as "the Flying Fool." There was no admission charge.

Tina Mackey testified she was the superintendent of recreation for the Joliet Park District (the park district). She testified she was in charge of the Taste, which was held at the Joliet Memorial Stadium. The stadium is park district property. Mackey testified the stadium is enclosed by a fence and is generally closed to the public when there is no scheduled event taking place. Mackey testified the stadium is used for high school football games and special events such as the Fourth of July celebration and the Taste.

Mackey testified that each year she began screening acts in November and December to appear at the upcoming Taste. She attempted to vary the entertainment from year to year. A schedule was developed and certain entertainers were invited. Some type of contract was thereafter entered into between the entertainers and the

park district. Any entertainer who was not scheduled was not allowed to perform. Mackey testified everything was done with an eye toward maintaining control over the event.

Mackey also testified there was a sign at the entrance to the stadium stating the park district had the right to refuse admittance. Mackey stated that in previous years they had stopped a photographer from offering to photograph persons attending the Taste for a fee. Also, persons handing out coupons for free food were told to stop.

Mackey stated she was working at the Taste on May 30, 1991. She estimated that some 15,000 to 20,000 persons attended the event on that day. She and the police were in constant radio communication during the Taste. At around 7:30 p.m., she received notice of a crowd gathering near the north end of the track. She immediately went to the area. On arriving she noticed "people" (the defendant) performing "an entertainment routine." She described it as a "sort of audience participation; no big deal."

Mackey, and police officials who had also arrived, watched the performance. A police officer asked her if she knew who these people were. After doing some checking she concluded the entertainers did not have a contract to perform at the Taste. However, Mackey testified, "[I]t seemed harmless enough at the time, so we said *** let's let them proceed and kind of see what happens, and when they were done, we will explain to them this is a formal organized event, that they are not scheduled and we would appreciate it if they didn't perform and did, in fact, leave."

Mackey and the police continued watching the act, which involved members of the audience. Mackey testified the performance began to get "a bit crude." At one point, the defendant brought out a black plastic gun. The defendant gave the gun to a girl from the audience and had her point it at another man's crotch. Mackey stated she and the police looked at each other and then she stated to the police, "That's it, we are going to have to shut this down immediately." The police officers then went over to the defendant. Mackey did not accompany the police. In fact, she did not speak with the defendant at all or inform him personally that he could not perform and that he had to leave the premises.

Lieutenant William J. Fitzgerald of the Joliet police department was the security director at the Taste. On May 30, 1991, he was in charge of the overall supervision of the grounds. Fitzgerald testified he observed a man performing to a group of between 75 and 100 people. Fitzgerald testified one of the officers complained the act was

getting "a little raunchy at times." He stated Mackey made the decision to have the officers ask the defendant to leave.

Fitzgerald testified he told "them" they were going to have to stop performing. (The record shows the defendant's wife was also present; however, it appears she was not part of the performance.) According to Fitzgerald, the defendant "became quite vocal" and stated he was not going to stop. The defendant told Fitzgerald he had "one more thing to do," and "he just continued to play on this thing." Fitzgerald told the defendant he would have to leave or he would be arrested. The defendant then told Fitzgerald he was going to have to be arrested because he had a constitutional right to do what he was doing. Fitzgerald told the defendant it was a question of trespass and that he had to leave. Thereafter, the defendant threw a hat onto the ground and told the crowd he was being arrested and needed bond money. The defendant was then taken to the "booking room" beneath the stadium.

Joliet police officer Richard Chizmark testified he was also present during the defendant's performance. He was told by Mackey and Fitzgerald that the act was unauthorized and that when the defendant finished he would be asked to leave. When the plastic gun was produced, Mackey and Fitzgerald decided the act had to be stopped.

Chizmark approached the defendant and told him he had to stop performing. The defendant inquired as to why he had to stop his act and whether he had broken any laws or ordinances. Chizmark explained to the defendant that he did not have a contract to perform, and though he had not broken any laws, the park district was asking him to leave the premises. Chizmark advised the defendant that if he did not leave he would be committing a trespass.

The defendant stated he was not breaking any laws; therefore, he was not leaving. Fitzgerald then came over and continued talking with the defendant. When the defendant continued to refuse to leave he was arrested. Chizmark testified the defendant was not given a chance to pack his props. (Apparently the defendant's wife gathered up the items.)

At trial, the defendant denied he refused to stop performing and maintained he complied with the order to stop. The defendant testified he approached the crowd and told them the Joliet police were stopping his performance. He then began picking up his things. He placed his hat on the ground and told the crowd he was a street performer. Fitzgerald told him he was under arrest for soliciting without

a license. The defendant contended the charge was changed to trespass later in the booking room.

The trial court found the park district had a right to "license" who was going to perform on its property and had a right to tell those who did not have such permission to leave. The court found the defendant refused to leave after being told to do so. Therefore, the trial court found the defendant guilty of trespass.

On appeal, the defendant contends the trespass ordinance as applied to him violates his rights under the first amendment to the United States Constitution (U.S. Const., amend. I) and section 3 of article I of the Constitution of the State of Illinois (Ill. Const. 1970, art. I, §3). The defendant maintains his performance was stopped on the basis of its content.

Although the defendant asserts a constitutional claim, we find, given the evidence, we need not reach this claim because the case can be decided on more narrow grounds.

■ Joliet ordinance section 21—107(a) provides in pertinent part: "No person shall *** remain upon such land or building, or any part thereof, of another after receiving notice from the owner, occupant, owner or occupant's agent, person in charge of such land or peace officer to depart." (Joliet, Ill., Code of Ordinances §21—107(a) (1988).) Remaining upon the land of another after being requested to leave is sufficient to complete the offense. (See *People v. Thompson* (1978), 56 Ill. App. 3d 557, 372 N.E.2d 117.) Nothing in the United States Constitution prevents a public entity, be it State or local, from even-handed enforcement of a general trespass law *vis-a-vis* public property. (See *Adderley v. Florida* (1966), 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242.) A public entity, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated. *Adderley v. Florida* (1966), 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242.

Under sections 8—1(a) and 8—10 of the Park District Code (70 ILCS 1205/8—1(a), 1205/8—10 (West 1992)), park districts may "plan, establish and maintain" programs such as the Taste of Joliet and enter into contracts in furtherance thereof. In the instant case, the Joliet Park District had contracted with all entertainers who were to appear at the Taste. Although the event was open to the public free of charge, the park district maintained strict control over the event as far as food venders and entertainment were concerned. In order to maintain this control, the park district entered into a contractual relationship with all parties who were to entertain at the Taste. No one

was allowed to perform without having first entered into an agreement with the park district.

Under these circumstances, the park district had the authority to request that the defendant stop performing and leave the premises. The record shows the defendant refused to leave when so instructed by the Joliet police. At the time, the police were acting as the agents of the park district. Therefore, the record supports a finding that the defendant was guilty of trespass.

The defendant also contends, for the first time on appeal, that the complaint was fatally defective because the wrong last name was used in the body of the complaint. The heading on the complaint names the defendant, Michael D. Franklin. However, in the body of the complaint the defendant is listed as Michael D. Randall.

■ An objection raised to the misnomer of the defendant in a charging instrument has been held waived when it comes after a plea of not guilty. (See *People v. Vinci* (1938), 369 Ill. 563, 17 N.E.2d 19.) There is no reversible error unless it appears some substantial injury was done to the accused whereby he was unable to intelligently make his defense or was exposed to the danger of a second trial on the same charge. *People v. Ferraro* (1979), 79 Ill. App. 3d 465, 398 N.E.2d 1001.

In the instant case, at trial the defendant raised no objection to the mistake in the complaint. There was no question that he was the individual charged with trespass. He was fully able to present his defense. His name appears correctly in the heading of the complaint. Under the circumstances, we find no reversible error.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY, P.J., and BARRY, J., concur.