**BUCKHOLZ, Appellant,**

v.

**FIRST FEDERAL SAVINGS BANK, Appellee.**

[Cite as *Buckholz v. First Fed. Sav. Bank* (1995), 102 Ohio App.3d 400.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67220.

Decided April 10, 1995.

*Gaines & Stern Co., L.P.A., David Roloff* and *Wally Mueller*, for appellant.
*Joanne Schloz,* for appellee.

NAHRA, Judge.

Appellant, Marilyn Buckholz, appeals the trial court's grant of summary judgment in favor of appellee, First Federal Savings Bank. For the following reasons, we affirm.

Marilyn Buckholz left her job at TransOhio Savings Bank and started working for Broadview Savings Bank. Employees of Broadview allegedly told her that she would be eligible for all benefits on the first day of employment. After working for Broadview for two months, appellant became disabled. She was denied disability benefits because she had worked at Broadview less than three months.

Thereafter, Broadview Savings was declared insolvent and the Resolution Trust Corporation ("RTC") was appointed as receiver of Broadview. First Federal purchased a substantial amount of Broadview's assets and liabilities from the RTC.

The purchase agreement between First Federal and the RTC lists the liabilities assumed by First Federal. Claims by Broadview's employees were not listed as a liability assumed by First Federal. In fact, First Federal entered into an

indemnity agreement, whereby RTC agreed to indemnify First Federal for certain liabilities *not* assumed pursuant to the purchase agreement. Specifically, RTC agreed to indemnify First Federal for all liabilities arising out of claims based on the rights of any Broadview employee.

First Federal obtained all of Broadview's branch offices with their customer accounts, fixtures, furnishings and equipment. These branch offices began operating as First Federal facilities.

Most of Broadview's employees were offered jobs with First Federal. Many of Broadview's managers were given comparable positions with First Federal. There was no evidence the board of directors and senior officers of Broadview had similar positions with First Federal. Appellant was not offered a job at First Federal.

Alan Budney, a Broadview personnel manager, knew of appellant's claim for disability benefits. Budney became a personnel manager for First Federal.

Appellant sued First Federal for fraud and promissory estoppel. Buckholz claimed that as successor to Broadview, First Federal was liable for the alleged representations of the Broadview employees. The trial court found that First Federal was not liable as successor, and granted summary judgment in favor of First Federal.

Appellant's sole assignment of error states:

"The trial court erred in granting First Federal's motion for summary judgment, concluding that First Federal was not liable as a 'successor' to Broadview Savings."

The trial court used the test for successor liability set out in *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331. *Flaugher* held that a purchaser of a corporation's assets is not liable for the liability of the seller corporation unless (1) there is an express or implied assumption of such liability, or (2) the sale of assets amounts to a *de facto* merger or consolidation, or (3) the purchaser corporation is a mere continuation of the seller corporation, or (4) the transaction is a fraudulent attempt to escape liability. Under the *Flaugher* test, First Federal would not be liable as a successor for the liability asserted by appellant.

Appellant contends that *Flaugher* states the general rule of successor liability, but that an exception applies for cases involving unfair labor practices and civil rights violations. *Equal Emp. Opportunity Comm. v. MacMillan Bloedel Containers, Inc.* (C.A.6, 1974), 503 F.2d 1086; *Golden State Bottling Co. v. Natl. Labor Relations Bd.* (1973), 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388.

A less stringent test[1] for successor liability should apply in unfair labor practice and discrimination cases because of the congressional policies expressed in labor and civil rights legislation, and because the successor benefits from the unlawful practices and is usually in the best position to remedy the violations. *Id.; Preyer v. Gulf Tank & Fabricating Co., Inc.* (N.D.Fla.1993), 826 F.Supp. 1389. *Flaugher* involved a personal injury claim, and the same rule cannot apply to a discrimination claim because "an employee's claim for unpaid wages or benefits is internal and should not be extinguished because of a mere change in the corporation's external legal title." *Preyer, supra,* at 1395.

■ Appellant contends that the test for discrimination and labor cases should apply to her promissory estoppel and fraud claims because her claims are also internal. However, there are no statutory policies supporting fraud or promissory estoppel claims, and the successor does not necessarily benefit from the fraud or promises of the predecessor. The *Flaugher* test has been applied to contractual obligations of the predecessor, *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129, and to employment contracts of the predecessor, *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 607 N.E.2d 1140. (*Link* did not raise the issue, however, of whether the *MacMillan Bloedel* test applies.) Thus, the test for discrimination and labor cases does not necessarily apply to appellant's case.

Even if the *MacMillan Bloedel* test applies, an exception to *MacMillan Bloedel* applies to the facts of this case. See *Payne v. Security S. & L. Assn. F.A.* (C.A.7, 1991), 924 F.2d 109. When the successor purchases the assets of an insolvent savings and loan from the RTC, the RTC is liable for any liabilities of the insolvent savings and loan not expressly assumed by the successor. Sections 1821(d)(2)(F)(i) and 1821(d)(2)(H), Title 12, U.S.Code; *Payne, supra; Vernon v. Resolution Trust Corp.* (C.A.11, 1990), 907 F.2d 1101, 1109; *Pernie Bailey Drilling Co. v. Fed. Deposit Ins. Corp.* (C.A.5, 1990), 905 F.2d 78, 80. Here, liabilities arising from the claims of Broadview's employees were not assumed by First Federal. Thus, RTC was liable for appellant's claim but First Federal was not.

---

1. The test for determining whether a successor is liable for unfair labor practices or discrimination is a balancing test involving the consideration of the following factors:

"(1) whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether [the successor] uses the same plant, (5) whether [the successor] uses the same or substantially the same work force, (6) whether [the successor] uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether [the successor] uses the same machinery, equipment and methods of production and (9) whether [the successor] produces the same product." *MacMillan Bloedel, supra,* 503 F.2d at 1094.

404

Appellant asserts that because RTC agreed to indemnify First Federal for the claims of Broadview's employees, First Federal must have assumed the liability for such claims. The purchase agreement between the RTC and First Federal clearly states that the indemnification agreement is for liabilities not assumed by First Federal. There is no issue of fact over whether First Federal assumed the subject liability. First Federal was entitled to judgment as a matter of law because according to federal statute, it was not liable for appellant's claims.

Accordingly, appellant's assignment of error is overruled.

The decision of the trial court is affirmed.

*Judgment affirmed.*

HARPER, P.J., and O'DONNELL, J., concur.