(No. 45144.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JAMES J. JONES, Appellee.

*Opinion filed January 26, 1973.*

WILLIAM J. SCOTT, Attorney General, of Springfield, and BASIL G. GREANIAS, State's Attorney, of Decatur (JAMES B. ZAGEL, Assistant Attorney General and SCOTT B. DIAMOND, Assistant State's Attorney, of counsel), for the People.

JOHN F. McNICHOLS, District Defender, of Springfield, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

James Jones was convicted of armed robbery following a jury trial in Macon County on November 16, 1970, and sentenced to imprisonment for a term of eight to twenty-four years. Claiming that he had been denied his constitutional right to be indicted by a grand jury, defendant appealed to the Appellate Court for the Fourth District. That court reversed his conviction (4 Ill. App. 3d 870), and we granted the State's petition for leave to appeal.

On October 7, 1970, the Macon County grand jury returned an indictment charging defendant Jones and Michael Anderson with armed robbery. Its relevant portions are:

"The Grand Jurors *** present, that MICHAEL ANDERSON and JAMES J. JONES, *** the twenty-fourth day of September in the year of our Lord One Thousand Nine Hundred and Seventy, at and in the

462

County of Macon aforesaid, in the State of Illinois, aforesaid, at 406 East Cantrell Street, City of Decatur, committed the offense of ARMED ROBBERY, in violation of Chapter 38, Section 18—2, Ill. Rev. Stat., 1969, in that they knowingly took an indeterminate amount of United States currency from the person and presence of Charles Mundy, by threatening the imminent use of force, while armed with a dangerous weapon, to-wit: a Winchester, single-barrel, sawed-off shotgun ***."

On the morning of trial, November 16, 1970, the State's Attorney moved to amend the indictment by substituting the name "Delbert R. Mundy" for "Charles Mundy"; the motion was granted over defendant's objection. Testimony at trial established that Charles Mundy was Delbert R. Mundy's son. Defendant was found guilty of armed robbery under the amended indictment.

The sole issue before us is whether the misnomer of the armed-robbery victim in this case constituted a formal defect under our amendment statute, section 111—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 111—5), which provides:

"111—5. An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:

(a) Any miswriting, misspelling or grammatical error;

(b) Any misjoinder of the parties defendant;

(c) Any misjoinder of the offense charged;

(d) The presence of any unnecessary allegation;

(e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or

(f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged."

It is, of course, clear from a reading of the statute that its enumeration of certain defects as "formal" is not intended to be exclusive.

The State contends that proof of the armed-robbery

victim's name is not an essential element of the crime charged and that an indictment would be sufficient without it. If this is so, they urge that such an error in pleading must be formal and may be properly amended before trial. In support of this position, the State cites the *Crouch* and *Adams* cases in which we held that the identities of "victims" in forgery and sale-of-narcotics cases were unnecessary allegations in indictments charging those offenses. *People v. Crouch (1963), 29 Ill.2d 485; People v. Adams (1970), 46 Ill.2d 200.*

In *Crouch* we said that "[t]he gist of the offense of forgery is the intent to defraud involved in the making of a forged instrument or knowingly uttering the same." (29 Ill.2d 485, 488.) Similarly, in *Adams* we noted: "The statute creating the offense makes no reference to the purchaser of the drug and his identity is not an element of the crime. The gravamen of the offense is the unlawful sale itself." 46 Ill.2d 200, 203.

Those cases are clearly distinguishable from the offense of armed robbery, which requires the taking of property from the person or presence of another by the use or threat of force, while armed with a dangerous weapon. Armed robbery is one of those crimes whose impact is focused more directly upon an individual victim than upon society generally. Danger to the person, as well as the taking of property, is the essence of the crime. We believe the law to be well stated in *People v. Walker (1955), 7 Ill.2d 158, 161:* "Where an indictment charges an offense either against persons or property, the name of the person or property injured, if known, must be stated, and the allegation must be proved as alleged." The opinion in *Walker* continued: "Proof of the Christian name is unnecessary, however, where the facts in evidence leave no doubt as to the identity of the person."

A holding that the identity of an armed-robbery victim is an essential allegation of an indictment charging that offense is, however, not dispositive of the issue of

whether the misstatement of identity is a formal or substantial defect. We have examined with care the authorities from other States cited to us and find a nearly even split among those jurisdictions which have considered this question. Those cases which permitted the amendment of a victim's identity through a change of first name tend to be more persuasive, however, because of their greater currency. (*E.g., McDole v. State (1957), 229 Miss. 646, 91 So. 2d 738; People v. Cruz (1955), 285 App. Div. 1076, 139 N.Y.S.2d 722; Dye v. Sacks (1962), 173 Ohio St. 422, 183 N.E.2d 380; contra, e.g., State v. Taylor (1897), 49 La. Ann. 319, 21 So. 516; Commonwealth v. Snow (1930), 269 Mass. 598, 169 N.E. 542.*) This trend away from the formalism which characterized criminal pleading in the past is embodied in our section 111—5, as disclosed by the chief draftsman's commentary: "The committee felt that the practical limitations should overcome the conceptual ones and provided for the efficient amendment of formal defects." S.H.A., ch. 38, par. 111—5, Committee Comments, p. 444 (1963).

The liberalization of criminal pleading also reflects a lessening in importance of the indictment's secondary functions. The indictment as a means of informing defendants of particulars concerning the case is now far overshadowed by the array of discovery procedures available to the defense. Similarly, the time when an indictment defined the limits of jeopardy has passed and a prior prosecution on the same facts may be proved by resort to the record. (See, *e.g., People v. Jankowski (1945), 391 Ill. 298, 302.*) The primary safeguard of indictment by grand jury, which remains secured to criminal defendants, is to protect individuals from the caprice of the public prosecutor. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States (1960), 361 U.S. 212, 218, 4 L. Ed. 2d 252, 257, 80 S. Ct. 270, 273.*

We believe that this constitutionally required protection has been afforded this defendant and that the particular facts in this case demonstrate the amendment of the victim's first name to be a mere formality. Where, as here, no hint of surprise or prejudice to the defendant is shown, allowance of such an amendment is not error.

The judgment of the Appellate Court for the Fourth District is reversed and the judgment of the circuit court of Macon County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*