THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DWIGHT H. DOSS, Defendant-Appellant.

Fourth District   No. 4—86—0524

Opinion filed September 24, 1987.

Jeff Justice and Michael I. Campbell, both of Hull, Campbell & Robinson, of Decatur, for appellant.

Hugh Finson, State's Attorney, of Monticello, for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Dwight H. Doss, was indicted for perjury by a grand jury in Piatt County. The charges arose out of two separate incidents where defendant testified in Piatt County circuit court regarding the circumstances surrounding his acquisition of farmland from one of his clients. The defendant waived a jury trial and the trial court, after hearing evidence, dismissed one count and found defendant guilty on the remaining two counts. Defendant was sentenced to two years in the penitentiary. Defendant raises several issues on appeal involving the pleadings, evidentiary rulings, reasonable doubt and the reasonableness of his sentence. We reverse and remand for a new trial based upon error in the court's finding of the existence of an attorney-client privilege and the subsequent refusal of the court to order the disclosure to defendant of transcribed statements given by defendant's former clients to their new attorney.

On February 9, 1983, a three-count indictment for perjury was returned by the grand jury of Piatt County against defendant. All three counts of the indictment related to the purchase of 80 acres of farmland by defendant from Eugene and Nancy Bloomingdale. Eugene Bloomingdale's aunt died in April of 1973 leaving her entire estate to

him and naming him executor. Bloomingdale retained defendant, a licensed attorney, to handle the probate of the estate. In November of 1974, approximately 1½ years after the estate was opened, the primary asset of the estate, 80 acres of farmland, came into the possession and ownership of defendant. Defendant claimed the transfer was in accordance with a written contract knowingly executed after extensive negotiations and the representation of Bloomingdale by independent counsel. Bloomingdale asserted no such transaction took place and that documentation in support of the sale was fraudulent.

In 1980, an investigation of the transaction was conducted by a special prosecutor and by the guardian appointed for Bloomingdale as a disabled adult. Defendant testified before a grand jury called by the special prosecutor and before a circuit court judge pursuant to a citation to discover assets served upon him by Bloomingdale's guardian. At these proceedings defendant explained how he came to own the 80 acres. It was these explanations which the 1983 grand jury found to be perjury.

On April 24, 1986, defendant filed a motion *in limine* requesting a pretrial order requiring the production of transcribed interviews conducted of the Bloomingdales by Kenneth Baughman, their new attorney. The statements had been taken in the presence of third parties. Prior to the filing of the motion *in limine*, both the defendant and the State had caused subpoenas *duces tecum* to be served on Baughman requiring the production of the statements. Baughman filed a petition to quash the subpoenas alleging in substance that the statements were privileged under the attorney-client privilege.

The trial court heard evidence and arguments on the motion and petition on April 29, 1986. Baughman testified as follows: He was a practicing attorney and on January 2, 1980, he met in his office with Mr. and Mrs. Bloomingdale, Jacquelyn Morris and Shirley Durbin. He did not recall who had called to make the appointment nor did he know beforehand the purpose of the meeting or for whom he might be rendering legal assistance. His understanding at the time was that both Mrs. Morris and Mrs. Durbin played a role in the Bloomingdales' affairs and were concerned about the Bloomingdales' continuing relationship with defendant. All four persons solicited legal advice as to what recourse the Bloomingdales might have against defendant. Subsequently, Mrs. Morris came to serve as guardian of Bloomingdale's estate and in that capacity retained Baughman to file a civil suit against defendant. Mrs. Durbin never has been a client of Baughman and was present only to provide moral support and encouragement to the Bloomingdales in obtaining legal advice. Finally, Baughman stated

Bloomingdale was of below average intelligence and needed the assistance of others to obtain legal services.

Mrs. Durbin also testified at the hearing. She testified she had known Mr. Bloomingdale since he took up residence in Bement, Illinois, where she also resided. She recalled being in Baughman's office at the conference with the Bloomingdales along with Mrs. Morris. During the conference the only comment she made was that the Bloomingdales "would have to get away from [defendant]." She testified she did not seek any legal advice from Baughman nor did she receive any. Finally, she stated she attended the meeting at the request of the Bloomingdales to provide moral support.

At the conclusion of testimony and arguments by counsel, the trial court granted the petition to quash the subpoenas and denied the motion *in limine* ruling that Durbin and Morris were agents of the Bloomingdales and as such their presence did not constitute a waiver of the attorney-client privilege. Therefore, the transcribed interviews were not subject to discovery.

The disputed communications were important to defendant's case, as Mrs. Bloomingdale testified at the civil trial which was held prior to the criminal proceedings in this case that at the first meeting with Baughman she was shown a copy of the contract to sell the farm entered into between herself and her husband and defendant for the first time. Baughman testified in the civil proceedings, too, but stated he had no such document at their first meeting on January 2, 1980. Defendant contends a copy of this contract was given to the Bloomingdales on the day it was signed, March 4, 1974. Defendant argues that if a copy of the contract was at the first meeting between Baughman and the Bloomingdales and Baughman denies that it came from him, it could only have come from the Bloomingdales and Mrs. Bloomingdale is thus guilty of perjury when she stated she did not receive a copy of the contract and did not know they had sold the farm.

▪ Ordinarily the presence of a third person indicates a lack of intention that the communications of a client to his attorney are meant to be confidential and the privilege does not apply. (*Champion v. McCarthy* (1907), 228 Ill. 87, 81 N.E. 808; M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 505.5 (4th ed. 1984).) The presence of an agent of the client in furtherance of the client's business or the presence of representatives of the lawyer does not destroy the privilege. *In re Estate of Busse* (1947), 332 Ill. App. 258, 75 N.E.2d 36.

There is no evidence Mrs. Durbin acted as an agent or advisor to the Bloomingdales. Additionally, she testified in spite of Mr.

Bloomingdale's possibly low intelligence level, the Bloomingdales needed no help in getting across what was important to their attorney.

The trial court based its decision, in part, on what it apparently considered to be a matter of common sense—the presence of a third party should not waive the attorney-client privilege where the third party was present to provide support to the client at a particularly trying period in the client's life. The trial court felt this circumstance should not constitute a waiver of the attorney-client privilege, especially since the client, probably unsophisticated in the affairs of law, would not be intending to waive the privilege by the presence of the third party.

■ While the sentiments of the trial court are admirable, the law of this State is to the contrary. The presence of Mrs. Morris might be excused as the presence of an agent of the parties since she later became the guardian for Mr. Bloomingdale, but the presence of Mrs. Durbin at the meeting with Baughman on January 2, 1980, constitutes a waiver of the attorney-client privilege. Due to the possible importance to the defendant's case of the communications held nondiscoverable as a result of the finding of attorney-client privilege by the trial court, we find the denial of the motion *in limine* and the granting of the petition to quash the subpoena to be reversible error and remand this case for a new trial.

A number of the other issues asserted by the defendant on appeal are questions of law and will appear again in the event of a new trial. Therefore, we shall deal with them here.

The first issue raised by defendant concerned the indictment itself. One of the witnesses called to testify before the perjury-indicting grand jury was a certified court reporter. She read into the record a transcript of the testimony of defendant at a guardianship proceeding in Piatt County circuit court on March 3, 1980. She was asked to read the prior testimony which formed the basis for counts II and III of the indictment. Later it was discovered the transcript read to the grand jury was incorrect when compared to the tape recording of the testimony made by the same court reporter. On the eve of trial, the defendant filed a motion to dismiss the indictment based upon the incorrect testimony presented to the grand jury. The State filed a motion to amend the indictment and correct the discrepancies.

At the hearing on the motion to amend the indictment it was agreed by counsel for both the State and the defense that the words recorded on tape were accurate and were the words to be relied upon by the court as stating defendant's testimony. The trial court ruled

the indictment could be amended, holding the defect was a formal one and there was no surprise to defendant as defense counsel informed the trial court he had been aware of the discrepancies for about six months prior to filing his motion and the change did not change his defensive strategy or trial preparation.

Most of the discrepancies were of a very minor nature, such as substituting the word "the" for "that." The only discrepancy which remained a source of contention between the parties was found in the transcript of defendant's testimony set forth in count III of the indictment. The testimony in the indictment contained the phrase "so Gene told me that he wanted the value of the estate appraisal." The actual testimony as evidenced by the tape recording should have included the phrase that "Gene told me he wanted double the value of the estate appraisal." The importance of this discrepancy to defendant was that in counts I and II of the indictment defendant states that the sale price for the farm was $188,000. If the value of the estate appraisal is used in count III, the defendant would appear to be saying the sale price was only $100,000, but the defendant actually said that Gene wanted double the estate value, which would have been $188,000 again. Defendant urges that contradiction under oath is powerful evidence and is a significant form of impeachment. The grand jury was presented with the testimony of Eugene (Gene) Bloomingdale acknowledging signing a contract for sale and also stating that the sale did not take place because he was duped into signing the contract. In contrast, the defendant testified that arm's-length negotiations resulted in the signed contract. If the grand jurors had believed defendant instead of Bloomingdale, there would have been no indictment for perjury.

Defendant argues it is the words themselves that amount to the criminal act charged as perjury. In this instance, the grand jury was told defendant gave two separate contradictory explanations in the very words which were alleged to have been false. Defendant urges that the impeaching testimony about the sale price destroyed his credibility with regard to all other aspects of his testimony. Therefore, the grand jury had no choice but to believe that he was lying.

■ While a court does have inherent authority to dismiss an indictment when it was obtained in violation of a defendant's due process rights and the violation is established with certainty (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244), we find no such violation here. The error was an inadvertent one due to improper transcription. Further, the evidence before the grand jury included much more than just the testimony of defendant and Mr. Bloomingdale.

Mrs. Bloomingdale also testified to being duped into signing the contract and the ways in which defendant hid the truth from them for almost six years. Testimony from an accountant who reviewed defendant's tax returns and from a loan officer with the Federal Land Bank from whom defendant obtained a loan on the farmland supported the State's theory that defendant duped the Bloomingdales into selling their land and then schemed to hide the facts from them. There was enough evidence for the grand jury to have found probable cause that defendant perjured himself without relying on the portion of defendant's testimony which was transcribed erroneously.

■ Defendant also contends the State should not have been allowed to amend its indictment to reflect the correct wording of defendant's testimony. Section 111—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—5) permits an indictment to be amended only for formal defects. A formal defect is one which does not affect the nature and elements of the offense. (*People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370.) Contrary to defendant's assertions, the offense of perjury here was not just the actual words used by the defendant to describe the negotiations between the Bloomingdales and himself, but the fact that the negotiations went on at all. The theory of the State's case was that defendant perjured himself by stating negotiations occurred and not that the negotiations were different than those described by defendant. Before the amendment, the defendant's quoted testimony consisted of a description of the negotiations he had with Bloomingdale culminating in the execution of the agreement and deed. After the amendment, the quoted testimony still consisted of a description of the negotiations culminating in the execution of the agreement and deed. The defendant's narrative was substantially unchanged.

■ There was no change from one offense to another (see *People v. Betts* (1979), 78 Ill. App. 3d 200, 397 N.E.2d 106) and there was no surprise or prejudice to the defendant. (*People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361.) The primary safeguard of an indictment by grand jury, protection from the caprice of the public prosecutor, remained intact. (53 Ill. 2d 460, 464, 292 N.E.2d 361, 363.) We find no error in allowing the State to amend its indictment, as the only correction was a mere formal one.

■ Defendant next asserts error in the trial court's denial of his motion to suppress prior testimony of Eugene Bloomingdale. Bloomingdale died prior to the trial of this cause but had previously testified in the civil suit filed against defendant by Bloomingdale's guardian in Macon County circuit court. That suit had claimed dam-

ages from defendant for improperly obtaining title to the 80 acres of farmland left to Bloomingdale by his aunt. After the trial court in this case denied the motion to suppress, portions of the transcript of Bloomingdale's testimony in the Macon County proceedings were introduced into evidence.

Before prior testimony can be admitted as an exception to the hearsay rule there must be proof that in the prior proceedings there was an identity of the parties and the issues. (*McInturff v. Insurance Co. of North America* (1910), 248 Ill. 92, 93 N.E. 369.) However, the strictness of the rule set forth in *McInturff* has been eroded since that decision (see *Laboy v. Industrial Com.* (1978), 74 Ill. 2d 18, 383 N.E.2d 954; *People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160; *George v. Moorhead* (1948), 399 Ill. 497, 78 N.E.2d 216; M. Graham, Cleary & Graham's Handbook of Illinois Evidence secs. 804.2 through 804.5 (4th ed. 1984)), so that now all that is required is the issues be substantially identical.

■ Here, the issues were substantially identical. The issues in the instant case were whether the defendant lied under oath when he stated he acquired 80 acres of farmland from the Bloomingdales after good-faith negotiations. In order to prove its case, the State needed to prove the defendant acquired the farmland by deceit, trickery, or in any other manner other than good-faith negotiations. The issues in the civil case were many, as there were several different counts, but all had to do with how the defendant acquired the farmland. The defendant would have had a fair opportunity to cross-examine Bloomingdale during the former case on the essential issues presented here. Hence, there was no prejudice to the defendant in allowing Bloomingdale's former testimony.

■ The remaining issues raised on appeal are all questions of fact which arose during the course of trial or are the result of the exercise of judicial discretion during trial and sentencing. As a court of review we will not substitute our judgment for that of the trial judge on such questions unless it is clearly against the manifest weight of the evidence. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 15, 426 N.E.2d 824, 831.) In view of our decision to reverse and remand this cause for a new trial, it is not necessary to discuss most of those issues and we decline to do so. However, in order to remove the risk of subjecting defendant to double jeopardy (see *People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563; *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366) we shall briefly consider the issue of guilt beyond a reasonable doubt.

■ A trial court's evidentiary findings will not be disturbed un-

less manifestly against the weight of the evidence. (*People v. Cheek* (1982), 93 Ill. 2d 82, 94, 442 N.E.2d 877, 882.) Upon review of the record we believe there was sufficient evidence introduced at trial for the court to conclude that defendant was guilty beyond a reasonable doubt. By this statement we do not mean to make a finding upon defendant's guilt or innocence which would be binding on retrial, especially in view of our decision to reverse and remand, which may result in additional evidence at any retrial of this cause. Instead, we make this finding only to avoid the risk of double jeopardy to defendant.

For the reasons noted, we reverse the order of the circuit court of Piatt County allowing the petition to quash the subpoena requiring disclosure of transcribed interviews given by defendant's former clients to their new attorney and remand the cause for a new trial after such disclosure is made. We affirm the trial court's denial of the motion to dismiss the indictments, the order allowing the amendment of the indictments, and the order admitting the transcript of prior testimony.

Affirmed in part, reversed in part, and remanded.

McCULLOUGH and LUND, JJ., concur.