**Ronald Dale PAYNE,
Plaintiff–Appellant,**

v.

**SECURITY SAVINGS & LOAN
ASSOCIATION, F.A.,
Defendant–Appellee.**

**No. 90–1490.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1991.

Decided Feb. 4, 1991.

ment in the food scandal, but that does not elevate his actions to constitutional violations.

Nile J. Williamson, Peoria, Ill., for plaintiff-appellant.

David B. Goroff, William J. McKenna, Jr., Hopkins & Sutter, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Security Savings and Loan (Security Savings) discharged plaintiff Ronald Payne from his position as Branch Manager and Loan Officer in February, 1985. Payne brought suit against Security Savings in district court, claiming that he was terminated because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* In February, 1989, a jury agreed. By agreement of the parties, the issue of damages was then submitted to the district court. But before the court could hold a hearing on damages, Security Savings was declared insolvent and closed by the Office of Thrift Supervision in August 1989. The Resolution Trust Corporation (RTC) became the receiver for Security Savings and proceeded to transfer through a purchase and assumption agreement most of Security Savings' assets and liabilities to another thrift, Security Federal Savings and Loan (Security Federal). Liability for the judgment Payne obtained against Security Savings, however, was not transferred to Security Federal.

In September 1989, apparently concerned that he would have trouble collecting a judgment against Security Savings or RTC, Payne sought to name Security Federal as a party-defendant in a motion to amend his complaint. Security Savings responded with a motion to substitute its Receiver, RTC, as the proper party-defendant. Before ruling on these motions, the district court held a hearing on damages. The court found that Payne had failed to mitigate his damages after January 1, 1987, and therefore denied him back pay for 1987, 1988, and 1989, as well as front pay. The court did award Payne back pay for 1985 and 1986, as well as attorney's fees and costs, totalling $66,395.92. Without expressly ruling on Payne's motion to amend his complaint, the court then ordered that final judgment be entered against RTC as Receiver for Security Savings.

Payne appeals, contending that the court erred in finding that he failed to mitigate damages after 1986 and in substituting RTC, rather than Security Federal, as defendant. We affirm.

I.

Plaintiff's first argument on appeal is that the district court erred in reducing the damage award to reflect what it found was plaintiff's failure to seek substitute employment after January 1, 1987. The law governing mitigation of damages is clear: in order to recover lost wages for the period following his discharge, Payne must demonstrate that he unsuccessfully sought suitable or comparable employment with "reasonable diligence." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982); *see also Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1202 (7th Cir.1989); *Hunter v.*

*Allis Chalmers Corp.*, 797 F.2d 1417, 1427 (7th Cir.1986). Because the question of mitigation is a factual one, we will not overturn the district court's finding unless it was clearly erroneous. *Hybert v. Hearst Corporation*, 900 F.2d 1050, 1054 n. 7 (7th Cir.1990); *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 159–60 (7th Cir. 1981).

Security Savings discharged Payne in February, 1985. The record indicates that in the year following his discharge, Payne's job search was earnest and extensive; he sent out a great many resumes and knocked on a great many doors in an effort to find employment in the financial services industry. However, the district court noted that Payne sent out "substantially all" of his resumes by the end of May 1986, and that by the beginning of 1987, his job search had slowed to a trickle. According to Payne's own court testimony, he contacted not more than a dozen banks in 1987 and ten banks in 1988 regarding possible employment. Payne testified in the damages hearing that he spent roughly eight to ten hours a week in 1987 answering newspaper advertisements, but his deposition testimony before trial suggests less effort. At his deposition, he stated that he looked for employment "two or three days a month" during 1987 and "[a] few hours a week, maybe a month" in 1988. Payne's efforts clearly waned after his substantial search in 1985 and 1986 proved unsuccessful. His discouragement is understandable, and his lack of success is regrettable, but his duty to mitigate did not evaporate in the face of his difficulties. On the basis of the evidence before us, we cannot say that the district committed clear error in finding that Payne did not take reasonably diligent steps to mitigate damages after 1986.

## II.

██ Payne's second argument on appeal is that the district court erred in denying his post-trial motion to substitute Security Federal, the successor to Security Savings' assets, as a defendant in this litigation. His argument for substitution is grounded in Rule 25(c) of the Federal Rules of Civil Procedure which permits a court to substitute a successor-in-interest as a defendant in a pending litigation. Plaintiff's claim fails because the congressional scheme that governs the transfer of assets that took place here—the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 *et seq.* (FIRREA)—provides that RTC, and not a subsequent purchaser of assets, is the successor to a failed thrift's liabilities unless RTC expressly designates otherwise.

When Security Savings went into receivership, the Resolution Trust Corporation became the Receiver of Security Savings' assets. As Receiver, RTC was the legal successor under FIRREA to "all valid obligations of the insured depository institution." 12 U.S.C. § 1821(d)(2)(H). The question, then, is whether in selling Security Savings' assets to Security Federal, RTC passed along the ADEA liability which it had initially assumed. The answer is clearly no. FIRREA authorizes the RTC to organize thrift institutions which will "take over such assets or such liabilities as [RTC] *may determine to be appropriate.*" *See* 12 U.S.C. § 1821(d)(2)(F)(i) (emphasis added). The statute contemplates that RTC will determine which assets and liabilities of a failed thrift should be sold and transferred, and which it should keep. This design facilitates the sale of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the RTC to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations.

The Purchase and Assumption Agreement governing the transfer of assets between the RTC and Security Federal stated that Security Federal was assuming only those liabilities specifically enumerated in the agreement. By default, all other liabilities remained the responsibility of RTC. Litigation liabilities were not mentioned in the agreement. Absent an express transfer of liability by the RTC and an express assumption of liability by Security Federal, FIRREA directs that RTC is the proper successor to the liability at issue here. *See*

**112**

*Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (11th Cir.1990); *Pernie Bailey Drilling Co. v. FDIC*, 905 F.2d 78, 80 (5th Cir.1990); *Village South Joint Venture v. FDIC*, 733 F.Supp. 50, 51 n. 1 (N.D.Tex.1990). Plaintiff's argument for the substitution of Security Federal as Security Savings' successor is thus without merit.

The judgment of the district court is AFFIRMED.