**UNITED STATES of America**

v.

**Jesse J. EVANS.**

**No. 96 CR 436.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 10, 1997.

David S. Rosenbloom, U.S. Attorney's Office, Chicago, IL, for U.S.

Freddrenna M. Lyle, Chester Slaughter, Lyle & Slaughter, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On January 8, 1996, the defendant, Jesse Evans, made certain statements to James Koch, an attorney, during a conversation at Mr. Koch's office, at which Mr. Evans, Mr. Koch, and John Holden were present. The government has moved to admit at trial Mr. Koch's testimony regarding the conversation. At issue is whether Mr. Evans' statements to Mr. Koch are protected by the attorney-client privilege. This determination depends on the role Mr. Holden was playing at the meeting. For the following reasons, the government's motion is granted.

### I.

The purpose of the attorney-client privilege is to encourage and enable the client to make full disclosure to the attorney so that the attorney may render informed legal advice. Because the privilege may cause relevant information to be withheld from the factfinder, it applies only to the extent necessary to achieve its purpose. *In re Grand Jury Proceeding (Cherney)*, 898 F.2d 565, 567 (7th Cir.1990). "As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed," *In re Walsh*, 623 F.2d 489, 493 (7th Cir.1980), but "should be strictly confined within the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983) (quotation omitted). The burden of establishing the existence of the privilege is upon the party asserting it. *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991).

The Seventh Circuit has adopted the general principles of the attorney-client privilege as outlined by Wigmore: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the com-

munications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* (citation omitted).

■ It is vital to a claim of privilege that the communication be made in confidence. Whether the communication is made in confidence depends on the circumstances. "One of the circumstances by which it is commonly, apparent that the communication is not confidential is the *presence of a third person* ...." 8 John H. Wigmore, *Evidence in Trials at Common Law* § 2311, at 601–02 (John T. McNaughton ed., 1961) (emphasis in the original); *In re Walsh,* 623 F.2d at 495 (citing Wigmore, *supra*); *see also United States v. Keplinger,* 776 F.2d 678, 700, 701 (7th Cir.1985) (trial court's finding that communications were not in confidence not clearly erroneous where information was intended to be disclosed to regulatory agency and "statements to attorneys were made in presence of third parties").[1]

## II.

Although the presence of a third party at an attorney-client meeting may destroy the privilege, it does not do so in all circumstances. *United States v. Landof,* 591 F.2d 36, 39 (9th Cir.1978). For example, if that third party "was acting as an attorney, the privilege c[an] be asserted." *Id.*[2] Thus, the issue is whether Mr. Holden was acting as Mr. Evans' attorney while in Mr. Koch's office on January 8, 1996. Put another way, the issue is whether an attorney-client relationship existed between Mr. Holden and Mr. Evans in Mr. Koch's office.

An attorney-client relationship is a contract. As such, it may arise when the attorney and the client expressly or impliedly consent to the formation of the relationship.[3] *Brown v. St. Joseph County,* 148 F.R.D. 246, 250 (N.D.Ind.1993). "The client must manifest his authorization that the attorney act on his behalf, and the attorney must indicate his acceptance of the power to act on the client's account." *Torres v. Divis,* 144 Ill.App.3d 958, 494 N.E.2d 1227, 1231, 98 Ill.Dec. 900 (1986). The consent may be written or oral. It is not necessary that the attorney be compensated for his or her services. 4 *Ill. L. & Prac.* § 91, at 149–150 (1971).

The attorney-client relationship may also arise in the absence of mutual consent. *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1317 (7th Cir.1978).[4] Here, the putative client must show "(1) that [he] submitted confidential information to a lawyer, and (2) that [he] did so with the

---

1. The government also asserts that "there ha[ve] been ... both [an] implied and explicit waiver of the attorney-client privilege," but does not pursue the waiver analysis. Normally, waiver of the attorney-client privilege occurs if, *after* the confidential communication, the client consents to its disclosure (explicit waiver), or partially discloses the communication or "relies on a legal claim or defense, the truthful resolution of which will require examining confidential communication" (waiver by implication). *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987). Mr. Evans' verbal conduct indicating waiver—his insistence on and consent to Mr. Holden's presence, notwithstanding Mr. Koch's warning that the conversation might consequently not be considered privileged—occurred *before* the statements for which the attorney-client privilege protection is sought. *See infra.* Therefore, the present situation does not comfortably lend itself to the waiver analysis. Rather, Mr. Evans' alleged insistence on and consent to Mr. Holden's presence *is* evidence of whether the communications in question were confidential.

2. In *Landof,* a meeting was attended by the defendant, his business partner, their attorney, and the attorney who represented the corporation which the defendant and his business partner used as a front for an embezzlement scheme. The defendant's business partner was allowed to testify about a statement the defendant made at that meeting. The court of appeals upheld the trial court's finding that the presence of the corporate attorney destroyed the confidential nature of the communications because the corporate attorney was not acting as an attorney at the meeting. 591 F.2d at 38–39.

3. This definition of the attorney-client relationship was developed in the context of legal malpractice, where the existence of the relationship is one of the elements of the cause of action.

4. This standard for the attorney-client relationship was developed in the context of motions to disqualify opposing counsel because, having represented the movant in the past, the attorney is claimed to possess confidential information and there is claimed to be a conflict of interest.

reasonable belief that the lawyer was acting as [his] attorney." *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.,* 657 F.Supp. 1486, 1495 (N.D.Ill.1987) (Moran, J.) (citing *Westinghouse Elec. Corp., supra*). The existence of the relationship "is not dependent upon the payment of fees nor … upon the execution of a formal contract." *Westinghouse Elec. Corp.,* 580 F.2d at 1317. However, the attorney-client "relationship does not arise where one consults an attorney in a capacity other than as an attorney." *Id.* at 1320.

## · III. ·

■ Central to the resolution of whether Mr. Holden was acting as Mr. Evans' attorney is the determination of the relative credibilities of Messrs. Holden and Koch, because the two offer directly opposing accounts of the controlling facts.

Mr. Holden testified that he introduced Mr. Evans to Mr. Koch as "my client, Jesse Evans." (12/23/96 Tr. at 7.) By contrast, Mr. Koch testified that, during the meeting, Mr. Holden told him that he was not acting as Mr. Evans' attorney, (12/20/96 Tr. at 36), "could not practice criminal defense law because he was a Chicago police officer," (12/20/96 Tr. at 33), and was present at the meeting only as a friend and a potential character witness. (12/20/93 Tr. at 29.) Mr. Koch further testified that he explained to Mr. Evans the nature of the attorney-client privilege and advised him that, based upon Mr. Holden's status as a friend, the conversation about to ensue "might not be privileged." (12/20/96 Tr. at 28, 31.) According to Mr. Koch, Mr. Evans "understood the nature of what [Mr. Koch] was telling him[, but] … wanted John Holden to be present for the conversation" nevertheless. (12/20/96 Tr. at 28–29, 31.) Mr. Koch also testified that Mr. Holden did not disagree with Mr. Koch's "characterizations regarding [Mr. Holden's] role as [Mr. Koch] explained [it] to Alderman Evans." (12/20/96 Tr. at 29.) Mr. Koch's contemporaneous notes of the meeting support his testimony. Mr. Holden steadfastly denied every one of the above statements, (12/23/96 Tr. at 7–8, 11–12, 39–44, 45–47), although he conceded that he might have

given the impression that he could act as a character witness, (12/23/96 Tr. at 37–38), and that he might have mentioned the fact that he was a friend, as well as an attorney, of Mr. Evans. (12/23/96 Tr. at 39.)

If Mr. Koch's testimony regarding what transpired at the meeting is believed, Mr. Holden's own words indicate that no consensual attorney-client relationship existed between him and Mr. Evans. In addition, given Mr. Holden's statement regarding his status at the meeting as a friend and a potential character witness, Mr. Koch's warning to Mr. Evans regarding potential lack of confidentiality, and Mr. Evans' explicit insistence on Mr. Holden's presence, Mr. Evans could not reasonably have believed that Mr. Holden was present at the meeting in his capacity as a lawyer. *See DCA Food Indus., Inc. v. Tasty Foods, Inc.,* 626 F.Supp. 54, 60–61 (W.D.Wis.1985) (no attorney-client relationship where "whatever subjective impression [the client] may have had about [the attorney's] role, under these circumstances he could not have reasonably believed that [the attorney] was acting as [his] attorney"); *see also Pain Prevention Lab, Inc.,* 657 F.Supp. at 1497 (no attorney-client relationship where "it was unreasonable for [the putative client] to believe [he] had an attorney/client relationship").

Mr. Holden's testimony was not plausible in numerous respects. For example, Mr. Holden testified that his purpose in bringing Mr. Evans to Mr. Koch's office was to find out whether *Mr. Holden* could represent Mr. Evans. Mr. Holden also testified, however, that he told Mr. Koch that he was interviewing other lawyers besides Mr. Koch, and that he in fact did so on the same day he met with Mr. Koch. (12/23/96 Tr. at 8, 9.) It is not believable that Mr. Holden needed to interview several attorneys, let alone in the company of his purported client, to find out if Mr. Holden could represent Mr. Evans. Mr. Holden also testified that Mr. Koch never stated that his presence in the room might destroy the attorney-client privilege between Mr. Koch and Mr. Evans, (12/23/96 Tr. at 7–8), although Mr. Koch's notes of that date appear to confirm his testimony about this statement. it is difficult to think of any rea-

son why Mr. Koch would have fabricated that conversation, or the notes of the conversation. Mr. Holden also testified that he had no idea that the matter about which he was allegedly representing Mr. Evans was a criminal matter. (12/23/96 Tr. at 16.) Yet all the attorneys he says he went to with Mr. Evans in connection with this matter were, as Mr. Holden agreed, criminal defense attorneys. (12/23/96 Tr. at 49–50.)

There are other examples, and the examples given of course do not describe demeanor, which I observed and include in my evaluation. To summarize, Mr. Holden was simply not believable. In addition, Mr. Holden is a close friend of Mr. Evans, whom he reveres as a father figure, (12/23/96 Tr. at 12–13), and if the January 8 conversation is held unprivileged, Mr. Holden may be called to testify about it. (12/23/96 Tr. at 14.) Moreover, as a Chicago police officer, Mr. Holden is arguably subject to disciplinary action for "[f]ailure to report promptly to the Department any information concerning any crime or other unlawful action," (Gov. Ex., Chicago Police Dep't R. 21), such as the information which Mr. Evans confided to him. I conclude that Mr. Koch testified truthfully that Mr. Holden stated he was at the meeting with Mr. Koch and Mr. Evans as a friend and potential character witness, and not as Mr. Evans' attorney, and that when warned that this fact might render the conversation unprivileged, Mr. Evans nevertheless stated he wanted Mr. Holden to remain. Thus, Mr. Holden was not acting as Mr. Evans' attorney at the meeting with Mr. Koch.

## IV.

The courts are somewhat inconsistent with regard to the impact on confidence of the presence of relatives and friends. 1 *McCormick on Evidence* § 91, at 335 (John W. Strong gen. ed., 1992). The comparison of *United States v. Bigos,* 459 F.2d 639 (1st Cir.1972), and *People v. Doss,* 161 Ill.App.3d 258, 514 N.E.2d 502, 112 Ill.Dec. 839 (1987),

is illustrative. In *Bigos,* the court held that it was not error to allow the defendant's former attorney to invoke the attorney-client privilege, notwithstanding the presence of the defendant's father at the attorney-client consultation. The court implied that its careful review of the record showed that the intent to preserve confidentiality was present under the circumstances. 459 F.2d at 643. On the other hand, in *Doss* the appellate court held it reversible error to accord privilege to the attorney-client communications in the presence of a third party, where the third party was merely providing moral support to client, who, despite the client's "low intelligence level, ... needed no help in getting across what was important to the[ ] attorney." 112 Ill.Dec. at 842, 514 N.E.2d at 505.[5] *See also Saxholm AS v. Dynal, Inc.,* 164 F.R.D. 331, 339–40 (E.D.N.Y.1996) (attorney-client privilege not available because third-party was present as "personal advisor" and did not "serve[ ] any function at the meeting").

In sum, the general rule is to inquire "not only ... whether the client reasonably understood the conference to be confidential but also whether the presence of the relative or friend was reasonably necessary for the protection of the client's interests in the particular circumstances." 1 *McCormick on Evidence* § 91, at 335; 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(a)(4)[01], at 503–42 to 503–43 (1990) (quoting and adopting *McCormick on Evidence, supra* ).

Mr. Koch's testimony makes clear that Mr. Evans "reasonably understood the conference [not] to be confidential." *See* 1 *McCormick on Evidence* § 91, at 335. The most important question is whether Mr. Holden's presence was "reasonably necessary for the protection of [Mr. Evans'] ... interests in the particular circumstances." *See id.* The purpose of the attorney-client privilege, beyond which the privilege should not be extended, is to enable the client to disclose to the attorney that which the latter needs to render informed legal advice. *In re Grand*

---

5. Notably, the appellate court criticized the trial court's reasoning that "the presence of a third party should not ... constitute a waiver of the attorney-client privilege ... since the client, *probably unsophisticated in the affairs of the law,*

*would not be intending to waive the privilege* by the presence of the third party." *Doss,* 112 Ill. Dec. at 842, 514 N.E.2d at 505 (emphasis added).

*Jury Proceeding*, 898 F.2d at 567. Therefore, the issue is whether Mr. Evans would have been unable to seek appropriate criminal legal representation without Mr. Holden by his side. Mr. Evans has not made such a showing.

Accordingly, since Mr. Holden was not acting as Mr. Evans' attorney at the January 8 meeting and Mr. Holden's presence was not reasonably necessary, Mr. Evans cannot carry his burden of showing that his statements to Mr. Koch are entitled to the protection by the attorney-client privilege. *See White*, 950 F.2d at 430.

### V.

Mr. Evans argues that even if the attorney-client privilege does not protect Mr. Evans' statements to Mr. Koch, Canon 4 of the ABA Code of Professional Responsibility and Rule 1.6 of the Illinois Rules of Professional Conduct (RPC) prohibit Mr. Koch from testifying. Mr. Evans is wrong. First, "[f]ederal privilege law applies to criminal cases brought in federal court" and state law, including rules of professional conduct, is irrelevant. *United States v. Wimberly*, 60 F.3d 281, 284–85 (7th Cir.1995) (citing *United States v. Gillock*, 445 U.S. 360, 368, *100* S.Ct. 1185, 1191, 63 L.Ed.2d 454 (1980)); Fed. R.Evid. 501. Second, "[t]he attorney-client privilege exists apart from, and is not coextensive with, the ethical confidentiality precepts." *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.1986). Third, Illinois RPC allow disclosure of client confidences upon a court order. Ill. RPC R. 1.6(c)(1). As to the ABA Code, it is merely advisory; only the RPC have the force of law, having been adopted by the Illinois Supreme Court.[6]

### Conclusion

For the reasons stated above, the government's motion to admit Mr. Koch's testimony is granted.

---

6. Mr. Evans also argues that Fed.R.Evid. 410 and Fed.R.Crim.P. 11 prohibit the government's use of Mr. Koch's testimony. Both Rules provide that evidence of any statements made by the defendant in the course of plea discussions with

an attorney for the prosecuting authority are inadmissible against the defendant. Mr. Evans' statements to Mr. Koch are not those whose inadmissibility is contemplated by the above Rules.